IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IMAGEVISION.NET, INC.,                    )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )        Civil Action No.  12-054-GMS-MPT
                                          )
INTERNET PAYMENT EXCHANGE, INC.,          )
                                          )
          Defendants.                     )
                                          )

**MEMORANDUM**

## I.     INTRODUCTION

On January 18, 2012 ImageVision.Net, Inc. ("Imagevision") brought this action against

Internet Payment Exchange, Inc. ("IPX") for infringement of U.S. Patent No. 7,567,925 ("the

'925 patent").  (D.I. 1.)  The court referred this case to Magistrate Judge Thynge to "conduct all

proceedings related to discovery disputes, alternate dispute resolution, and dispositive and

nondispositive motions, excluding claim construction, up to the pretrial conference."  (D.I. 11.)

On June 18, 2012, after filing an *inter partes* reexamination request with the Patent and

Trademark Office (the "PTO"), IPX filed a motion in this court to stay the case pending such

reexamination.[1]  (D.I. 14.)

Pending before the court are Magistrate Judge Thynge's Report and Recommendation

(the "R and R"), dated September 4, 2012 (D.I. 36), and IPX's Objections to the Report and

---

[1] At the time IPX filed its motion to stay, the PTO was expected to decide whether to grant reexamination
by September 15, 2012, three months from the request date.  (D.I. 15 at 1.)  It appears, however, that the PTO did
not assign a filing date to IPX's reexamination request due to a deficiency in that filing.  (D.I. 40 at 2.)  IPX
submitted a corrected request on September 14, 2012, and a PTO decision is now expected by December 14, 2012.
(*Id.*)

Recommendation (D.I. 38). For the reasons that follow, the court will adopt in part and overrule in part the R and R.[2] The court will accept Magistrate Judge Thynge's ultimate recommendation that the court deny IPX's motion to stay pending the *inter partes* reexamination.

## II.    IPX'S OBJECTIONS

IPX argues that the magistrate judge erred in recommending that the court deny its motion to stay pending the PTO's reexamination and raises objections to three distinct portions of the R and R.  Specifically, IPX contends that the magistrate judge applied an incorrect overarching legal standard, that the analysis of the "issue simplification" factor constituted legal error, and that the analysis of the "prejudice" factor was similarly flawed.  The court will address each objection more fully below.

## III.    STANDARD OF REVIEW

A motion to stay is "not dispositive of a party's claim or defense," and the court's review is therefore governed by Rule 72(a) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 72(a).  Accordingly, the court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

## IV.    DISCUSSION

Having reviewed the R and R, the parties' submissions, and the applicable law, the court concludes that the magistrate judge committed no error with respect to the legal standard applied or the analysis of the "prejudice" factor.  The court, however, will modify the magistrate judge's ruling on the "issue simplification" factor.  The court addresses each of IPX's objections in more

---

[2] Specifically, the court will adopt the R and R with the exception of its conclusion in Section II.B that the "Simplification of Issues Before the Court" consideration disfavors granting IPX's motion to stay.  As discussed below, the court finds that this factor does favor a stay, albeit very slightly.

2

detail below.

A.    Legal Standard

IPX first argues that Magistrate Judge Thynge applied an incorrect legal standard in the R and R. The magistrate judge began by noting that "[t]he court's 'inherent power to conserve judicial resources by controlling its own docket' includes the discretion to a stay a litigation" and that such discretion "has been found to extend to patent cases where a reexamination by the [PTO] has been requested." (D.I. 36 at 2 (internal citation omitted).) She then described the contested standard as follows:

> In determining whether a stay is appropriate, the court's discretion is guided by the following factors: "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set."

(*Id.* at 2–3 (internal citations omitted).) This is an accurate illustration of the three-factor test engaged in by this court when considering a motion to stay, *see, e.g.*, *First Am. Title Ins. Co. v. MacLaren, L.L.C.*, No. 10-363-GMS, 2012 WL 769601, at *4 (D. Del. Mar. 9, 2012); *Nokia Corp. v. Apple, Inc.*, No. 09-791-GMS, 2011 WL 2160904, at *1 (D. Del. June 1, 2011), and IPX does not challenge this particular description (D.I. 38 at 3). Rather, IPX takes issue with the R and R's additional pronouncement that,

> [a] final decision is made with an eye toward maintaining an even balance between the competing interests of the parties at issue. "In maintaining that even balance, the Court must consider whether 'there is even a fair possibility that the stay would work damage on another party.'"

(D.I. 36 at 3 (internal citations omitted).) IPX suggests that the magistrate judge improperly appended this additional "test" to the court's well-established standard, and,

by replacing the "undue prejudice" or "clear tactical disadvantage" assessment with a supposedly more sensitive "fair possibility of damage" inquiry, made it more difficult for IPX to demonstrate that a stay was appropriate. (D.I. 38 at 3–4.) According to IPX, the disputed language "is not found in *any* of this Court's precedent addressing stay motions" and "[s]imply put . . . is not the law of this Court." (*Id.*)

The court finds that the magistrate judge committed no error with respect to the legal standard applied in the R and R. First, the court is unconvinced that the disputed language rises to the level of an additional "test." For the reasons that follow, it is most naturally read as describing the lens through which the court views and measures "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."

As an initial matter, it is important to recognize that the assessment of "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party" does not occur in a vacuum. Rather, in making such a determination, the court necessarily performs a balancing, comparing the burdens that a stay or the denial of a stay would impose upon the respective parties. For example, the concept of undue prejudice demands a reference point. It is not enough that a non-movant simply be harmed by a decision to stay—it must be *unduly* prejudiced, and this requires some reference to the comparative harm that the movant would otherwise suffer. Likewise, the finding of a "clear tactical disadvantage" requires the court to determine that its stay decision would place the non-movant at a disadvantage relative to its adversary.

The balancing implicitly required by the three-factor test becomes even more apparent when one considers the alternative formulation of the stay analysis often employed in this

4

district.  Judges in Delaware have often articulated a version of the stay test that explicitly weighs the hardship a movant would face in proceeding with litigation against the burden that a stay would impose upon the non-movant. *See, e.g.*, *Hartford Fire Inc. Co. v. Encore Mktg. Int'l , Inc.*, No. 10-620-SLR, 2011 WL 766587, at *3 (D. Del. Feb. 24, 2011); *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351, at *2 (D. Del. Dec. 13, 2010) (citing *St. Clair Intellectual Property Consultants, Inc. v. Fujifilm Holding Corp.,* No. 08-373-JJF-LPS, 2009 WL 192457, at *2 (D Del. Jan. 27, 2009)); *Del. Dep't of Natural Res. & Envtl. Control v. U.S. Army Corps. of Eng'rs*, 751 F. Supp. 2d 715, 732 (D. Del. 2010).  Far from representing an entirely different standard, Judge Thynge's three-factor test and , in particular, the question of "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party" can be viewed as simply consolidating the court's assessment of the relative burdens of the movant and non-movant within a single "factor."  Undue prejudice and clear tactical disadvantage are more likely to exist where the grant of a stay imposes a greater burden on the non-movant than its denial would inflict on the movant.

With this proper understanding that the three-factor stay analysis requires the court to engage in some degree of balancing, it becomes clear that the "fair possibility" inquiry is not an additional test but simply a means of better understanding the balancing implicit in the "undue prejudice" factor.  As the R and R states, the "fair possibility" test requires that a court look to the "competing interests of the parties at issue. 'In maintaining that even balance, the Court must consider whether 'there is even a fair possibility that the stay would work damage on another party.'"  (D.I. 36 at 3 (internal citations omitted).)  Where such possibility exists, "the party requesting a stay must demonstrate that the denial of a stay would result in a 'clear case of

hardship or inequity.'" *Bagwell v. Brewington-Carr*, No. 97-321-GMS, 2000 WL 1728148, at *20 (D. Del. April 27, 2000) (quoting *Denstsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658–59 (D. Del. 2000)). The "fair possibility" inquiry merely frames the way in which the court undertakes its "undue prejudice" balancing —where there is a "fair possibility" that a stay would prove detrimental to the non-movant, and the movant is unable to demonstrate a clear case of hardship or inequity, granting that stay is likely to result in undue prejudice to the non-movant.[3]

Moreover, contrary to IPX's assertion, the court has previously employed this language and called for the movant to "demonstrate that the denial of a stay would result in a 'clear case of hardship or inequity'" where "there is even a 'fair possibility' that a stay would prove detrimental to one of the parties." *Bagwell*, 2000 WL 1728148, at *20 (quoting *Denstsply Int'l, Inc.*, 734 F. Supp. at 658–59 ). As Imagevision points out, this requirement actually originated in Supreme Court and Third Circuit precedent. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."); *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075–76 (3d Cir. 1983) ("It is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party."). As such, it clearly is the "law of this Court."

For the above reasons, the court finds that the R and R's statement of the applicable legal standard is correct and not contrary to law.

---

[3] The fact that Magistrate Judge Thynge did not repeat the "fair possibility" language when repeating the three-factor test at the beginning of the R and R's "Analysis" section further suggests that the disputed language was intended merely to clarify rather than to supplement the three-factor test. (D.I. 36 at 4–5.)

B.      Issue Simplification

The R and R found that the "issue simplification" factor disfavored a stay "because the scope of the issues to be resolved during litigation substantially exceeds the scope of the issues that can be resolved during the reexamination proceedings." (D.I. 36 at 8.) The court agrees with the substance of the R and R's analysis and its core observation that, even were the PTO to grant reexamination, "there are many issues present in this case that the PTO simply cannot and will not address . . . Those issues include: (1) the infringement and damages; (2) the defenses under 35 U.S.C. §§ 101 and 112; and (3) the equitable defenses, such as laches and estoppel."[4] (*Id.* at 6.)

It is less clear, however, that the R and R's recognition of the many unresolvable issues actually supports its conclusion that the "issue simplification" factor *disfavors* a stay. While the issues that would remain for litigation do exceed those that might be resolved through the reexamination process, it is still the case that a stay could yield some measure of issue simplification. This is undeniably a benefit of the requested stay and should be recognized as such. The court views this factor as weighing in favor of a stay, albeit very slightly.[5]

---

[4] The court approves of the R and R's consideration of those issues that are unresolvable in the PTO proceedings despite IPX's objections that the court "has repeatedly recognized the benefits of reexamination in terms of simplifying issues in patent litigation." (D.I. 38 at 5.) As Imagevision points out, "Judge Thynge's decision in no way contradicts such 'recogni[tion].'" (D.I. 40 at 7.) The R and R merely concludes that, while a stay may simplify some of the issues before the court, many issues will remain even after reexamination.

[5] While the "issue simplification" factor is sometimes found to be neutral, the court is aware of no decision from Delaware concluding that this factor weighed *against* a proposed stay. Even the decision cited by Imagevision, *Belden Techs. Inc. v. Superior Essex Commc'ns LP*, No. 08-63-SLR, 2012 WL 3522327 (D. Del. Sept. 2, 2010), does not state that the "issue simplification" factor itself recommended against a stay. Rather, that opinion merely observes that a stay is less likely wherever there is little opportunity for simplification. *Id.* at *2 ("[A] stay is more appropriate when the only issues left for trial completely overlap with those typically resolved upon reexamination. Conversely, a stay is not favored when infringement, validity under 35 U.S.C. § 112, or other issues outside the purview of reexamination remain to be tried.") This is a hardly a remarkable proposition—when one of the three principal factors is found to be  neutral rather than weighing in favor of a stay, the movant's task necessarily

C.    Prejudice Analysis

The R and R concluded that the "prejudice" factor disfavored granting a stay in this case, relying substantially on the parties' status as direct competitors as well as the fact that, at the time IPX filed its motion to stay, the reexamination process was only in its early stages while this case was on the eve of discovery.  (D.I. 36 at 8–12.)  IPX contends that it was error for the magistrate judge to accord significant weight to the parties' status as competitors and that the judge improperly focused on the relative statuses of the PTO process and this litigation.[6]  (D.I. 38 at 6.)

The court first rejects IPX's claim that the R and R improperly considered the competitive relationship between the parties.  IPX flatly states that "[t]his Court has never recognized the parties' status as competitors in the stay analysis."  (*Id.*)  The court, however, considered precisely that in *Textron Innovations, Inc. v. Toro Co.*, No. 05-486-GMS, 2007 U.S. Dist. LEXIS 100102 (D. Del. Apr. 25, 2007), noting that "because this is a suit for money damages, a stay does not *unduly* prejudice [the plaintiff]  in that it does not compete with [the defendant] for sales."  *Textron Innovations*, 2007 U.S. Dist. LEXIS 100102, at *9; *see also Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375-GMS, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001) ("The court finds the prejudice to [the plaintiff] is slight, if any . . . [The plaintiff] is not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress.").  The R and R's consideration of the parties'

---

becomes more difficult.  The only conceivable scenario in which the "issue simplification" factor might weigh against a stay would arise where the reexamination process somehow was likely to *complicate* the litigation, and that is certainly not the case here.

[6] IPX also takes issue with the R and R's consideration of its delay in requesting the reexamination proceedings.  (D.I. 38 at 6.)

8

competitive relationship is not contrary to law.

IPX also complains that the R and R improperly focused on the status of the reexamination proceedings as well as IPX's delay in requesting the PTO reexamination. (D.I. 38 at 6.)   According to IPX, "[t]his Court has specifically held that any alleged delay in the reexamination process cannot form the basis for a prejudice claim." (*Id.* at 7.)   More accurately, this court has previously found that "delay does not, *by itself*, amount to undue prejudice." *Wall Corp. v. Bonddesk Grp.*, No. 07-844-GMS, 2009 U.S. Dist. LEXIS 20619, at *4 (D. Del. Feb. 24, 2009) (emphasis added).   Here, the magistrate judge did not rely solely on the delay in the reexamination proceedings.   As noted above, the R and R also determined that the parties' status as direct competitors indicated that Imagevision would be highly prejudiced by a stay. (D.I. 36 at 9.)   The court cannot find that the R and R's treatment of this issue was clearly erroneous or contrary to law.

## V.     CONCLUSION

For the foregoing reasons, the court will adopt in part and overrule in part the R and R. As discussed, the court overrules the conclusion in Section II.B of the R and R that the "issue simplification" factor disfavors granting a stay; in fact, the potential for a stay to simplify the issues before the court does pull gently in IPX's favor.   This factor, however, weighs lightly in this case and is insufficient to overcome the prejudice consideration.   The decision of whether to grant a stay is ultimately left to the court's discretion, and there is no reason to believe that the magistrate judge overstepped that authority here.   Therefore, the court will accept the R and R's ultimate recommendation and deny IPX's motion to stay pending the *inter partes* reexamination.

Dated: November _15_, 2012

CHIEF, UNITED STATES DISTRICT JUDGE

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IMAGEVISION.NET, INC.,                      )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )      Civil Action No. 12-054-GMS-MPT
                                            )
INTERNET PAYMENT EXCHANGE, INC.,            )
                                            )
            Defendants.                     )
                                            )

## ORDER

At Wilmington this _15th_ day of November 2012, consistent with the memorandum

opinion issued this same date, IT IS HEREBY ORDERED that:

1.      The Magistrate Judge's Report and Recommendation (D.I. 36) is ADOPTED IN

PART and OVERRULED IN PART; and

2.      The defendant's Motion to Stay (D.I. 14) is DENIED.

CHIEF, UNITED STATES DISTRICT JUDGE