**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IMAGEVISION.NET, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12-cv-00054-GMS-MPT |
| | ) | |
| INTERNET PAYMENT EXCHANGE, | ) | |
| INC., | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT INTERNET PAYMENT EXCHANGE, INC.'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

Gerard M. O'Rourke (#3265)
O'Rourke Law Office, LLC
1201 N. Orange Street, Suite 7260
Wilmington, DE 19801
Tel:  484-770-9046
Email:  gorourke@orourkefirm.com

Dated:  May 21, 2013

**Table of Contents**

I.  Introduction .......................................................................................................................... 1

II.  Claim Construction Principles ............................................................................................ 1

III.  Argument .......................................................................................................................... 2

   A.  Computing Terminal (Claims 1 and 24)............................................................................ 2

   B.  "The Computerized Transaction Database" Limitation (Claim 1) ....................................... 4

   C.  The "tracking" phrase. (Claim 1)...................................................................................... 6

   D.  The "Registration" limitation (Claims 3 and 5).................................................................. 7

   E.  The "Batch Updated" limitation (Claim 8) ........................................................................ 9

   F.  "Users of the System are assigned at least one level of access in the .. administrator" (Claim
   10)                                                                                        10

   G.  "Patient Service" (Claim 24) ......................................................................................... 12

   H.  "Non-patient Service" (Claim 24) .................................................................................. 14

IV.  Conclusion ...................................................................................................................... 16

## Cases

*AK Steel Corp. v. Sollac & Ugine,* 344 F.3d 1234, 1242 (Fed. Cir. 2003) ....................................................4

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001)* ...........................................................................................................................................6

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC,* 677 F.3d 1361, 1366 (Fed. Cir. 2012)...............2

*Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456 (Fed. Cir. 1998)....................................................1

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 980 (Fed. Cir. 1995), aff'd, *517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)).* ..........................................................................................................2

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.,* 244 F.3d 1365, 1380 (Fed. Cir. 2001) .............................6

*Minton v. National Association of Securities Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003) ............7

*O2 Micro Int'l Ltd. v. Beyond Innovation Technology Co., Ltd.,* 521 F.3d 1351 (Fed. Cir. 2008).........6, 12

*Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)* (en banc).............................. 1, 2, 14, 16

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013) .........2, 16

*Sandisk Corp. v. Kingston Technology Co., Inc.*, 695 F.3d 1348, 1361 (Fed. Cir. 2012)...........................4

*Tex Instruments Inc .v ITC*, 988 F.2d 1165, 172 (Fed. Cir. 1993) ...............................................................7

## Other Authorities

Manual of Patent Examining Procedure §2111.04 ...................................................................................10

**I.  Introduction**

Plaintiff Imagevision.Net, Inc., ("Imagevision") filed suit against Defendant Internet

Payment Exchange, Inc. ("IPX") asserting infringement of United States Patent 7,567,925 ("the

'925 patent").  Claims 1- 12 and 24 are at issue in the litigation.  Broadly speaking, the asserted

claims are directed to computer-operated systems for collecting payment at multiple points of

service ("POS") in a healthcare facility.

The parties have reached agreement on multiple claim terms.  Only eight (8) terms

remain in dispute.

This is IPX's Opening Claim Construction Brief.

**II.  Claim Construction Principles**

Claim construction is a question of law subject to *de novo* review. *Cybor Corp. v. FAS

Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998)* (en banc). Claim terms are generally given

their "ordinary and customary meaning" as they would be understood by a person of ordinary

skill in the art. *Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)* (en banc).

Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in

the context of the particular claim in which the disputed term appears, but in the context of the

entire patent, including the specification." *Id. at 1313*.

To ascertain the scope and meaning of the asserted claims, the Court looks to the words of

the claims themselves, the specification, the prosecution history, and, if necessary, any relevant

extrinsic evidence. *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC, 677 F.3d 1361,

1366 (Fed. Cir. 2012)* (citing *Phillips v. AWH Corp., 415 F.3d 1303, 1315-17 (Fed. Cir. 2005)*

(en banc)).  With regard to extrinsic evidence, the Federal Circuit has authorized reliance on that

evidence where the intrinsic record is ambiguous.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013).  Extrinisic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips, 415 F.3d at 1317* (quoting *Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)).*

IPX submits that most of the disputed claim terms can be resolved using only the intrinsic evidence.  However, with regard to the term "non-patient service" in claim 24, IPX submits that the Court will have to rely on extrinsic evidence since the specification contains no definition of the term and the use of the term in the specification is ambiguous.  As will be demonstrated below, "non-patient service" is a term of art in the healthcare field and IPX's definition is consistent with that definition.

## III.  Argument

IPX addresses each of the disputed claim terms as follows.

### A.  Computing Terminal (Claims 1 and 24)

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| computing terminal | computer-based device capable of receiving patient or customer payments | computer-based device |

The dispute between the parties here is relatively narrow.  Both parties agree that a "computing terminal" is a "computer-based device".  However, Imagevision wants to engraft an

additional limitation that requires that the "computing terminal" be "capable of receiving patient or customer payments".  That additional requirement is wholly at odds with the claim language, other claims in the '925 patent, and the teachings of the specification.

Initially, the claim language of claim 1 does not specify that the computing terminal be capable of receiving patient or customer payments.  The claim simply uses the word "terminal" without any further qualification.  That alone should be dispositive of the dispute between the parties.  However, various dependent claims of the '925 patent *do* require a payment collection system at the point of service  ("POS").  *See* Claims 6 and 7.

Claim 6 provides:

> The system of claim 1, further comprising *a payment collection system*, wherein the customer is requested to select to self pay or co pay, and is requested to select a payment method for entry to the at least one database, by the payment collection system.

JX 1, '925 Patent, claim 6 (emphasis supplied).

The doctrine of claim differentiation states that dependent claims are presumed to be of narrower scope than the independent claims from which they depend.  *AK Steel Corp. v. Sollac & Ugine,* 344 F.3d 1234, 1242 (Fed. Cir. 2003).  Furthermore, "[w]here as here, the sole difference between the independent claim and the dependent claims is the limitation that one party is trying to read into the independent claim, the doctrine of claim differentiation is at its strongest."  *Sandisk Corp. v. Kingston Technology Co., Inc.*, 695 F.3d 1348, 1361 (Fed. Cir. 2012).  Because claim 6 explicitly requires a payment collection system, claim 1 cannot require that the terminal "be capable of receiving patient or customer payments."

3

IPX's proposed construction is consistent with the specification of the '925 patent. The specification repeatedly states that the system "may" have the ability to collect payments. *See, e.g.*, JX 1 at Col. 4, lines 5 - 18; Col. 6, lines 4 - 25 ("As illustrated, typical payment options *may* be accepted at the POS, including, but not limited to, cash, credit cards, debit cards, and EFTs, for example.")(emphasis supplied); col. 6, lines 49 - 54; col. 7, line 15 - col. 8, line 12; col. 10, lines 12 - 13; col. 10, line 59 - col. 11, line 4; col. 12, lines 5 - 17; col. 12, lines 26 - 43. However, the computing terminals are not required to be able to collect payments. Imagevision's construction seeks to have the Court read the term "may" as "must" throughout the specification and is wrong for this reason as well.

The additional intrinsic evidence relied upon by Imagevision does not alter the above analysis. *See* Joint Claim Construction Statement Disputed Terms at page 1. For example, the term "computing terminal" was not given any special meaning during the prosecution of the '925 patent. Thus, Imagevision's reliance on its Official Action response on May 16, 2008, the September 3, 2008 Request for Continued Examination, and its Official Action response on February 6, 2009 is unavailing. JX 2. Similarly, the Patent Owner's response in the *inter partes* reexamination does not compel a different conclusion since it does not clearly and unambiguously alter the meaning compelled by the claim language and the specification.

### B. "The Computerized Transaction Database" Limitation (Claim 1)

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| computerized transaction database associated with each of the at least one processors for relationally and electronically tracking, within said database and by the | *No construction necessary* | a database capable of recording and storing, remotely from the at least one computing terminals, information related to services associated with a patient or |

| single health care service provider, remotely from each of the at least one computing terminal | | customer |
|---|---|---|

The parties have a fundamental dispute with the "computerized transaction database" phrase in claim 1.  IPX has provided a definition consistent with the intrinsic evidence.  In contrast, Imagevision has proposed no definition and instead argued that "no construction is needed".

IPX's construction is consistent with the intrinsic evidence.  *See, e.g.,* JX 1 at col. 4, ll. 5-40; col. 5, l. 20 – col. 6, l. 3; col. 6, ll. 26-48; col. 7, l. 51 – col. 8, l. 12; col. 8, ll. 30-41; col. 9, l. 61 – col. 10, l. 2; col. 10, ll. 34-58; col. 11, ll. 5-25; col. 12, l. 62 – col. 13, l. 34; col. 14, l. 53 – col. 15, l. 9; and related figures.  As a result, the court should certainly adopt it, particularly in the absence of any contrary proposal by Imagevision.

Imagevision's proposal is also unworkable because the disputed phrase does not involve words with ordinary meanings that jurors would understand.  See, e.g., *E.g., Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001) (finding no error in non-construction of "melting"); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.,* 244 F.3d 1365, 1380 (Fed. Cir. 2001) (finding no error in court's refusal to construe "irrigating" and "frictional heat").  Instead, this case is analogous to *O2 Micro Int'l Ltd. v. Beyond Innovation Technology Co., Ltd.,* 521 F.3d 1351 (Fed. Cir. 2008), where the Federal Circuit held it was error for the court not to construe the phrase "only if".  In the *O2 Micro* case, the parties ended up arguing their proposed constructions to the jury and the Federal Circuit rejected this approach.  *Id* at 1362.  That would be the outcome here because Imagevision repeatedly relies on this phrase to distinguish prior art during the original prosecution and in the

*inter partes* reexamination. *See, e.g,* JX2 at 6.3.08 Response to Official Action at pp. 9-10; Request for Continued Examination at pp. 9-11; 11. 18.09 Official Action at pp. 8-10; 2.6. 09 Response to Official Action at pp. 10-12; JX 7 at 2.4.13 *Inter Partes* Reexamination Amendment and Response. at pp. 8-45.

Not construing this limitation permits Imagevision to engage in the same conduct here that was condemned in the *O2 Micro* case: namely, arguing that the prior art does not teach this limitation while denying the jury the benefit of the Court's interpretation.  This is not the law, and Imagevision's proposal should be rejected.

**C.  The "tracking" phrase. (Claim 1).**

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| the tracking correlates to an increased collection rate of at least one of the self-pay payments and the overdue self-pay payments from the at least one customer | the tracking provides for improved collections over systems that are not computerized, multi-point of service systems | *Not limiting* |

The claimed subject matter is a system claim wherein the complete structure of the system is specified in the previous elements of the claim.  The claimed phrase simply expresses the intended result of the operation of the system recited in the other parts of the claim.  It does not limit the claim to any particular structure.  As a result, this phrase should be held not limiting.  *Minton v. National Association of Securities Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003), *Tex Instruments Inc .v ITC*, 988 F.2d 1165, 1172 (Fed. Cir. 1993); *see also* Manual of Patent Examining Procedure §2111.04 ("The determination of whether [a wherein clause] is a limitation in a claim depends on the specific facts of the case").

Furthermore, the intrinsic record does not provide any guidance on what is meant by the term. Thus, the specification is absolutely silent regarding what the basis for comparison of the step is. JX 1 at col. 2, ll. 17-26; col. 4, ll. 5-40; col. 6, ll. 26-40; col. 9, l. 61 – col. 10, l. 2; col. 10, ll. 34-58; col. 12, l. 62 – col. 13, l. 34; col. 14, l. 53 – col. 15, l. 9; and related figures.[1] Is it any prior art point of sale system? Is it a system where payments are not collected at the point of sale? The specification simply does not say. As a result, this is a still further reason to give this alleged "limitation" no weight in the claim construction analysis.

Similarly, the prosecution history does not provide guidance on what is meant by the phrase. See, e.g., JX 2 at 12.21.07 Official Action at p. 8; 5.16.08 Official Action Response at 11-12; 6.3.08 Official Action at pp. 11-12; Request for Continued Examination at pp. 12-13; 2.6.09 Response to Official Action dated at pp. 12-14

Finally, Imagevision's reliance on its Amendment and Response in the *inter partes* reexamination is misplaced. JX 7 Patent Owner's Amendment and Response at p. 19. The cited portion does not clearly state what the basis of comparison for the "increased collection rates".

### D. The "Registration" limitation (Claims 3 and 5)

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| registration | initial input of information regarding a patient or customer | input of information regarding a patient or customer |

---

[1] The parties have relied on essentially the same portions of the specification for their respective constructions. As a result, a discussion of Imagevision's specification citations is not necessary.

The dispute between the parties regarding the "registration" limitation is also very narrow.  It simply boils down to whether the registration is an "initial" input of information to the claimed point of sale system.

The specification is very clear that the point of sale system can be used with pre-existing registration information.  *See, e.g.,* JX 1 at col. 5, l. 32 – col. 6, l. 3; col. 7, l. 51 – col. 8, l. 29; col. 11, l. 26 – col. 12, l. 5; and related figures.[2].  That is, the purported invention of the '925 patent can be incorporated with existing physician practice management systems.  Thus, the specification provides:

> Alternatively, the customer registration may be integrated with prior registration from existing systems, which systems may provide an ability to recognize the existing customer, to associate payments made with that customer, and/or to pull records of that customer, among other actions, simply based upon entry of a customer data item, such as a name, phone number, or a swipe of a customer's card for payment, to the system of the present invention.

JX 1 at Col. 7, lines 52 - 60.

IPX's definition is also supported by other portions of the specification.  By way of example, the specification provides:

> As illustrated in FIG. 2, customer registration information may be requested in order to initiate a transaction.  Receipt of information will cause the present invention to search existing customer databases for a match and, if no match is found, will cause the issuance of a request for information to register the customer.  Upon receipt of registration of a new customer, the customer registration may be stored to the existing registration database for future accessing.  If the customer information entered causes location of an existing customer or customers, matches will be returned to allow for selection of the correct customer, as illustrated in Figure 3.

---

[2]   The parties have relied on essentially the same portions of the specification for their respective constructions.  As a result, a separate discussion of Imagevision's specification citations is not necessary.

JX 1 at Col. 5, lines 32 - 43.  This passage also makes clear that a registration may be preexisting, and not just a "new" registration.  There is no basis in the language of the claim or in the specification to engraft the word "initial" onto the definition of registration.

Finally, Imagevision's reliance on the Decision On the Request for Inter Partes Reexamination at p. 12, 16 is misplaced.  In the cited pages, the Examiner does not state that a "registration" is limited to an "initial registration".  Instead, the Examiner is discussing whether certain prior art relied upon by IPX shows importation of registration information from a second remote database as specified in claims 5 and 16.  This passage does not shed any light on the present dispute.

### E.  The "Batch Updated" limitation (Claim 8)

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| batch updated | updated with multiple pieces of information at one time | updated periodically |

The specification is crystal clear that "batch updated" means "updated periodically".  See JX 1 at Fig. 32; col. 3, ll. 45-47; col. 5, ll. 20-31; col. 8, ll. 13-29; col. 9, l. 33 – col. 10, l. 11; col. 10, l. 59 – col. 11, l. 44; col. 11, l. 59 – col. 12, l. 4; col. 12, l. 53 – col. 13, l. 24; col. 13, l. 55 – col. 14, l. 39; and related figures.  For example, Figure 32 is described in the specification as follows:

> FIG. 32 is a block diagram which illustrates the operation of the Daily Interactive Process and Batch Interface Process *(Periodic)* of the system.

Col. 3, lines 45 - 47 (emphasis added).  The specification also teaches:

> More specifically, with respect to FIG. 7, a series of existing legacy applications, and the system of the present invention, may receive and/or provide accessibility

9

to a plurality of flat files, which may be updated in real time, such as through the
use of the present invention, and such as at the POS, and/or *which may be batch
updated, such as nightly*.

Col. 8, lines 13 -18 (emphasis added).  This passage explicitly contrasts updates in "real time"

with "batch updates".  The context of this sentence clearly indicates that "batch updating" means

updated periodically.  As a result, IPX's proposed construction is entirely supported by the

specification.

In contrast, Imagevision's proposed construction is contrary to the explicit teachings of

the specification cited above.  Imagevision essentially wants the Court to construe the word

"batch" instead of the claim language "batch updated".  That is error.  The claim language is

what controls.

**F.  "Users of the System are assigned at least one level of access in the administrator" (Claim 10)**

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| users of the system are assigned at least one level of access in the administrator | ***No construction necessary*** <br><br> *Alternatively,* <br><br> users of the system are assigned at least one level of information access in the administrator | users of the system are given the ability to view at least one level of information in the system |

IPX has proposed a definition for the phrase "users of the system are assigned at least one

level of access in the administrator" that is entirely consistent with the intrinsic record.  JX 1 at

col. 4, ll. 42-49; col. 8, l. 30 – col. 9, l. 60; col. 10, l. 59 – col. 11, l. 5; and related figures.  For

example, the specification describes the ability of users to access different levels of information

in the system:

The system and method of the present invention also preferably complies with all privacy portions of federal legislation (e.g., the Health Insurance Portability and Accountability Act, or "HIPAA")  As discussed hereinbelow, user access may be provided *based on varying levels of system access and information* entered into the system, and thus privacy may be protected by only allowing access by authorized users with the appropriate level of access.

Col. 4, lines 42 - 29 (emphasis supplied).  The specification similarly provides:

The administrator may allow for logging of registered users, such as by entry of a user name and password, and may provide levels of access by user or permission type, in accordance with the user or permission type associated with the particular login entered, which association may be provided, for example, in at least one database within, or associated with the administrator.

For example, the system and method of the present invention may include three levels of user security, such as POS User, POS Supervisor, and POS Administrator....

Col. 8, lines 34 - 44.[3]  IPX's definition is also readily understandable by a jury.

Imagevision again asks the Court not to construe this phrase.  This approach again invites error into the matter for the reasons discussed above in connection with the relational transaction database limitation.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Technology Co., Ltd.,* 521 F.3d 1351 (Fed. Cir. 2008),

Alternatively, Imagevision's proposed definition will be confusing to the jury.  The specification is quite clear that the meaning of the disputed phrase is that users of the system can see various levels of information.  Imagevision's definition does not make this clear.

Finally, Imagevision relies on the Decision on the Request for Inter Partes Reexamination at page 6 in support of its argument.  JX 4.  The referenced page is discussing a piece of prior art relied upon by IPX in the Request.  It does not, in any way, support Imagevision's position.

---

[3]   The parties have relied on the same portions of the specification for their respective constructions.  As a result, discussion of Imagevision's specification citations is not necessary.

### G.  "Patient Service" (Claim 24)

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| patient service | a service that consists of or furthers the provision of medical care to a patient | a healthcare service provided by or at the direction of a physician |

Initially, IPX submits that the Court should consider the terms "patient service" and "non-patient service" together because, as discussed below, "non-patient service" is a term of art in the healthcare industry that has an art-recognized meaning.

The specification of the '925 patent does not define "patient service", nor does it define "non-patient service".  However, IPX's definition of "patient service" is consistent with the specification as a whole.  JX 1 at Col. 6, ll. 26- 40; col. 11, ll. 6-14; col. 12, l. 62 – col. 13, l. 23; and related figures.

For example, the specification teaches:

> The inclusion of payment codes allows for acceptance at a POS of payments from multiple categories of an accounting ledger.  For example, in a health care facility, payments may be accepted for patient services, and non-patient services, differentiable by entry of the relevant accounting code for the services provided, in conjunction with receipt of payment at the POS.

Col. 6, lines 26 - 32.  The specification also teaches:

> Thus, upon closing of a POS terminal, monies due and paid may be differentiated by type, such as patient payments versus non-patient payments, which differentiation may be made based on accounting codes entered for each transaction, as discussed hereinabove.

Col. 13, lines 4 - 8.

12

It is well understood in the art and in law that a "patient" is a person receiving healthcare services by or at the direction of a physician. *See* JX 8 Blue Cross Blue Shield of Michigan Medicare Plus Blue PPO Manual available at http://www.bcbsm.com/pdf/ma/2012/ppo-manual.pdf on page 5 (discussing non-patient services including when a laboratory test is taken and no concurrent diagnostic services are rendered by a physician); *see also* JX 9 University of California, Irvine Medical Center Financial Statements For the Years Ended June 30, 2010 and 2009 at page 6 (defining "non-patient services" to include referral lab, cafeteria, and parking operations.).

Imagevision's definition is vague and unworkable because it does not take into account art-recognized hospital billing and accounting practices. For example, if an X-ray or a lab test is a "patient service" even when no concurrent physician diagnosis is rendered, then that contradicts the usage of the term in the art even though the specification does *not* define "patient" service, but does discuss the term in connection with hospital billing practices. It is hornbook patent law that claims are given their "ordinary and customary meaning" as they would be understood by a person of ordinary skill in the art. *Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)* (en banc). Imagevision's construction violates this fundamental tenet of patent law.

Finally, Imagevision relies on the decision granting IPX's reexamination request where the Examiner erroneously relied on the above-cited portions of the specification and stated that a X-Ray was an example of a "patient service". JX 4 Decision on the Request for *Inter Partes* Reexamination at pp. 4-5, 6-7, 8-9, and 10-11. However, IPX has traversed this assertion and the Examiner has not, as yet, addressed IPX's arguments. JX 10 Third Party Comments On Patent

13

Owner Response filed March 5, 2013 at pp. 4 - 6 and references cited therein.  The Court should

give the Examiner's erroneous statement no weight in this proceeding.

### H.  "Non-patient Service" (Claim 24)

| Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| non patient service | a service that does not consist of or further the provision of medical care to a patient | parking, cafeteria, gift shop, pharmacy, durable medical equipment, and laboratory analysis where no physician service is rendered concurrently with the laboratory analysis |

The term "non-patient service" is undefined in the '925 patent.  The specification

discusses the term twice - each time without providing any guidance as to the term's meaning.

Thus, the specification provides:

> The inclusion of payment codes allows for acceptance at a POS of payments from
> multiple categories of an accounting ledger.  For example, in a health care facility,
> payments may be accepted for patient services and non-patient services,
> differentiable by entry of the relevant accounting code for the services provided,
> in conjunction with the receipt of payment.

Col.6, lines 26 - 32.  The specification further provides:

> Thus, upon closing of a POS terminal, monies due and paid may be differentiated
> by type, such as patient payments versus non-patient payments, which
> differentiation may be made based on accounting codes entered for each
> transaction as discussed hereinabove.

Col. 13, lines 4 - 8.

The lack of a definition or any guidance in the specification is not surprising because

"non-patient service" is a term of art in the health care field.   "Non-patient service" is

understood to include parking, cafeteria, gift shop, pharmacy, durable medical equipment and

laboratory analysis where no physician service is rendered concurrently with the laboratory analysis. *See* JX 8 Blue Cross Blue Shield of Michigan Medicare Plus Blue PPO Manual available at http://www.bcbsm.com/pdf/ma/2012/ppo-manual.pdf on page 5; *see also* JX 9 University of California, Irvine Medical Center Financial Statements For the Years Ended June 30, 2010 and 2009 at page 6 (defining "non-patient services" to include referral lab, cafeteria, and parking operations.); Declaration of Douglas Braun at JX 11 at pars. 5 -7.

Given the complete lack of definition for "non-patient service" in the specification, reliance on extrinsic evidence to determine its meaning is entirely appropriate. With regard to extrinsic evidence, the Federal Circuit has authorized reliance on that evidence where the intrinsic record is ambiguous. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013). That is the case here.

Just as with "patient service", Imagevision's definition of "non-patient service" is vague and unworkable because it does not take into account art-recognized hospital billing and accounting practices. For example, if an X-ray or a lab test is a "patient service" even when no concurrent physician diagnosis is rendered, then that interpreation contradicts the usage of the term in the art  It is hornbook patent law that claims are given their "ordinary and customary meaning" as they would be understood by a person of ordinary skill in the art. *Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005)* (en banc). Imagevision's construction violates this fundamental tenet of patent law.

Finally, Imagevision again relies on the decision granting IPX's reexamination request where the Examiner erroneously relied on the above-cited portions of the specification and stated that an X-Ray was an example of a "patient service"  while a cafeteria or gift shop purchase was

an example of a "non-patient service".  Decision on the Request for *Inter Partes* Reexamination at pp. 4-5, 6-7, 8-9, and 10-11.  However, IPX has traversed this assertion and the Examiner has not, as yet, addressed IPX's arguments.  Third Party Comments On Patent Owner Response filed March 5, 2013 at pp. 4 - 6 and references cited therein.  The Court should give the Examiner's erroneous statement no weight in this proceeding.

## IV.  Conclusion

For the reasons set forth, IPX respectfully requests that the Court adopt IPX's proposed claim constructions.

Date:  <u>May 21, 2013</u>                BY:  <u>     /s/Gerard M. O'Rourke     </u>
                                        Gerard M. O'Rourke (#3265)
                                        O'Rourke Law Office, LLC
                                        1201 N. Orange St.,
                                        Suite 7260
                                        Wilmington, DE 19801-1186
                                        *Attorneys for Defendant Internet Payment Exchange, Inc.*