# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **IMAGEVISION.NET, INC.,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 12-54-GMS-MPT |
| **INTERNET PAYMENT EXCHANGE, INC.,** | § § § | JURY TRIAL DEMANDED |
| Defendant. | § § § | |

## PLAINTIFF IMAGEVISION.NET, INC.'S
## ANSWERING CLAIM CONSTRUCTION BRIEF

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
Novak Druce Connolly Bove + Quigg LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19801
Tel: (302) 658-9141
frank.digiovanni@novakdruce.com
thatcher.rahmeier@novakdruce.com

Dated: June 5, 2013

*Attorneys for Plaintiff ImageVision.Net, Inc.*

**TABLE OF CONTENTS**

I.  INTRODUCTION..................................................................................................................1

II. CONSTRUCTION OF DISPUTED TERMS....................................................................1

    A.    computing terminal ('925 patent, cl. 1, 24) ............................................................1

    B.    computerized transaction database associated with each of the at least one processors for relationally and electronically tracking, within said database and by the single health care service provider, remotely from each of the at least one computing terminal ('925 patent, cl. 1) ......................................................4

    C.    "the tracking correlates to an increased collection rate of at least one of the self-pay payments and the overdue self-pay payments from the at least one customer" ('925 patent, cl. 1) ...............................................................................5

    D.    "registration" ('925 patent, cl. 3,5) ........................................................................6

    E.    "batch updated" ('925 patent, cl. 8) .......................................................................7

    F.    "users of the system are assigned at least one level of access in the administrator" ('925 patent, cl. 10)........................................................................8

III. CONCLUSION ...................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**             **Page**

*Alloc. Inc. v. ITC,*
  342 F.3d 1361 (Fed. Cir. 2003) ..................................................................................... 3

*Andersen Corp. v. Fiber Composites, LLC,*
  474 F.3d 1361 (Fed. Cir. 2007) ..................................................................................... 2

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,*
  359 F.3d 1367 (Fed. Cir. 2004) ..................................................................................... 6

*Biotec Biologistiche Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,*
  249 F.3d 1341 (Fed. Cir. 2001) ..................................................................................... 4

*Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.,*
  334 F.3d 1294 (Fed. Cir. 2003) ................................................................................... 10

*C.R. Bard, Inc. v. U.S. Surgical Corp.,*
  388 F.3d 858 (Fed. Cir. 2004) ....................................................................................... 3

*Hoffer v. Microsoft Corp.,*
  405 F.3d 1326 (Fed. Cir. 2005) ..................................................................................... 5

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,*
  381 F.3d 1111 (Fed. Cir. 2004) ..................................................................................... 3

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.,*
  244 F.3d 1365 (Fed. Cir. 2001) ..................................................................................... 4

*Minton v. Nat'l Association of Securities Dealers, Inc.,*
  336 F.3d 1373 (Fed. Cir. 2003) ..................................................................................... 5

*Philips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 1, 9, 10

*Regents of the Univ. of Minn. V. AGA Med. Corp.,*
  2012-1167 (Fed. Cir. June 3, 2013) .............................................................................. 3

*Sandisk Corp. v. Kingston Tech. Co.,*
  695 F.3d 1348 (Fed. Cir. 2012) ..................................................................................... 2

*Tegal Corp. v. Tokyo Electron Am., Inc.,*
  257 F.3d 1331 (Fed. Cir. 2001) ................................................................................... 10

*Texas Instruments Inc. v. ITC,*
  988 F.2d 1165 (Fed. Cir. 1993) ..................................................................................... 5

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ..... 9

I.   INTRODUCTION

Plaintiff ImageVision.Net, Inc. ("Imagevision") submits this Answering Claim Construction Brief in further support of its proposed constructions presented in its Opening Brief (D.I. 75) and in response to IPX's Opening Claim Construction Brief (D.I. 76).

II.  CONSTRUCTION OF DISPUTED TERMS

IPX seeks to drastically modify the scope of the asserted claims by rewriting them. IPX not only reads in specific limitations from irrelevant extrinsic evidence, but also selectively ignores fundamental limitations in an effort broaden the claims. All this is contrary to the claim language, the intrinsic record, and the law. The task before the Court, as the Federal Circuit reiterated in *Phillips,* is to determine constructions that are true to the claim language and most naturally align with the patent's description of the invention. *Philips v. AWH Corp.,* 415 F.3d 1303, 1316 (Fed. Cir. 2005) (*en banc*). IPX's constructions fail to meet *Phillips'* requirements.

A.   **"computing terminal"** ('925 patent, cl. 1, 24)

| Imagevision's Proposed Construction | IPX's Proposed Construction |
|---|---|
| "computer-based device capable of receiving patient or customer payments" | "computer-based device" |

IPX makes a number of arguments to support its proposed construction (and to criticize Imagevision's), but each argument fails. First, IPX argues that Imagevision's proposed construction is "wholly at odds with the claim language." D.I. 76 at 3. Yet, fundamentally, there is no internal inconsistency or contradiction in the claims when Imagevision's proper proposed construction is used. Imagevision's proposed construction requires the concepts of both "computing" and "terminal" by requiring that the "computing terminal" be a "computer-based device capable of receiving patient or customer payments." This contrasts with IPX's flawed construction, which *completely ignores* the concept of a "terminal." IPX's proposal—

1

"computer-based device"—changes the claim language from *requiring a terminal* to *not needing a terminal at all*.

Second, IPX wrongly invokes the doctrine of claim differentiation. D.I. 76 at 3. Claim differentiation does not apply where there are multiple differences between the dependent claim and the independent claim, such that the new limitations in the dependent claim, viewed in the aggregate, are not redundant of the dependent claim. As the Federal Circuit explained:

> A further reason for not applying the doctrine of claim differentiation in this case is that the Group I claims are not otherwise identical but for the references to pellets, linear extrudates, and composite compositions, and thus the district court's construction does not make the composite composition claims redundant. Instead, there are numerous other differences varying the scope of the claimed subject matter.

*Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007). Indeed, IPX recognizes that where "the *sole difference* between the independent claim and the dependent claims is the limitation that one party is trying to read into the independent claim, the doctrine of claim differentiation is at its strongest." D.I. 76 at 3 (citing *Sandisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1361 (Fed. Cir. 2012) (emphasis added)).

Claim 6, to which IPX points in an attempt to support its claim differentiation argument, depends from claim 1 and "further compris[es] a payment collections system, wherein the customer is requested to select to self pay or co pay, and is requested to select a payment method." But independent claim 1—properly construed with Imagevision's proposed construction—does not include the additional limitations of claim 6. Namely, claim 1 does not include the requirements that "the customer is requested to select self pay or co pay" and "the customer . . . is requested to select a payment method." Thus, the doctrine of claim differentiation is not applicable because Imagevision's proposed construction would not render dependent claim 6 co-extensive with claim 1.

2

Third, IPX implies that the specification's inclusion of payment collection at each of the terminals in each of the embodiments does not affect claim construction. *See* D.I. 76 at 4. Yet, "a patentee's choice of embodiments can shed light on the intended scope of the claim and a construction that excludes a preferred embodiment is rarely, if ever, correct." *C.R. Bard, Inc. v. U.S. Surgical Corp.,* 388 F.3d 858, 865 (Fed. Cir. 2004) (citation omitted); *see also Alloc. Inc. v. ITC,* 342 F.3d 1361, 1370 (Fed. Cir. 2003) (If every embodiment includes a limitation, there is a suggestion that "the very character of the invention requires the limitation be a part of every embodiment."); *Regents of the Univ. of Minn. V. AGA Med. Corp.,* 2012-1167 (Fed. Cir. June 3, 2013) (same). As discussed in Imagevision's Opening Brief, *every* embodiment described in the '925 patent includes a "computing terminal" that is capable of receiving patient or customer payments, in one form or another.

Finally, IPX wrongfully contends that the specification's permissive description of different and specific payment options, *e.g.,* cash, check, credit card, debit card, etc., should be read to apply to the general function of "payment collection" *as a whole* being permissive. *See* D.I. 76 at 4. The specification is clear that "[t]he present invention provides for an integrated point of service transaction management system *that enables the collection of fees*." JX1, col. 4, ll. 5-3 (emphasis added). Imagevision's proposed construction should thus be adopted.[1]

---

[1] IPXs argument that the "Patent Owner's response in *inter partes* reexamination does not compel a different conclusion since it does not clearly and unambiguously alter the meaning compelled by the claim language and the specification" is wrong. D.I. 76 at 4. The referenced response is consistent with the specification, and Imagevision does not cite it as evidence of a *disclaimer*, which would require a "clear and unambiguous" statement. *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111, 1123-24 (Fed. Cir. 2004).

3

B. **"computerized transaction database associated with each of the at least one processors for relationally and electronically tracking, within said database and by the single health care service provider, remotely from each of the at least one computing terminal" ('925 patent, cl. 1)**

| Imagevision's Proposed Construction | IPX's Proposed Construction |
|---|---|
| *No construction necessary* | "a database capable of recording and storing, remotely from the at least one computing terminals, information related to services associated with a patient or customer" |

In support of its wholesale re-write, IPX baldly states that its proposed construction is "consistent with the intrinsic evidence." D.I. 76 at 5 (string-citing several passages without explanation). Notably, IPX does not contend that Imagevision has made a proposal that is inconsistent with the intrinsic evidence. Indeed, it cannot be, because no construction is necessary, as demonstrated in Imagevision's Opening Brief. And in making the unsupported argument that Imagevision's "proposal is [] unworkable because the disputed phrase does not involve words with ordinary meanings that jurors would understand," *IPX does not identify a single term in this phrase that jurors would allegedly not understand*. D.I. 76 at 5. Indeed, almost all of the words in the phrase are included in the parties *agreed* constructions or disputed elsewhere in the claim construction briefing. *See* D.I. 69, Ex. A. Finally, IPX utterly fails to identify what is in dispute due to the parties' proposed constructions. As such, IPX's extensive citation to *O2 Micro* is beside the point.[2] D.I. 76 at 5-6. Imagevision's proposed construction should be adopted.

---

[2] Curiously, IPX cites to cases having terms that are more technical than those at issue here, and wherein the Federal Circuit found no error in the lower court's non-constructions. D.I. 76 at 5 (citing *Biotec Biologistiche Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001) ("the meaning of 'melting' does not appear to have required 'construction,' or to depart from its ordinary meaning"); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.,* 244 F.3d 1365, 1380 (Fed. Cir. 2001) (court did not err in relying on ordinary meanings of the terms "irrigating" and "frictional heat").

    **C.**    **"the tracking correlates to an increased collection rate of at least one of the self-pay payments and the overdue self-pay payments from the at least one customer" ('925 patent, cl. 1)**

| Imagevision's Proposed Construction | IPX's Proposed Construction |
|---|---|
| "the tracking provides for improved collections over systems that are not computerized, multi-point of service systems" | *Not limiting* |

    IPX's attempt to strip all meaning from this phrase should be rejected. Contrary to IPX's argument that the "claimed phrase simply expresses the intended result" of the claimed system, D.I. 76 at 6, the claimed phrase further limits and defines the "tracking" limitation introduced earlier in the claim. Imagevision's proposed construction properly requires that "the tracking provides for improved collections over systems that are not computerized, multi-point of service systems."

    The cases cited by IPX are inapposite. D.I. 76 at 6. In *Minton v. Nat'l Assoc. of Securities Dealers, Inc.,* the Federal Circuit was confronted with a "whereby" clause, and noted established law that "[a] whereby clause in a method claim is not given weight when it simply expresses the intended result of a process step positively recited." 336 F.3d 1373, 1381 (Fed. Cir. 2003); *see also Texas Instruments Inc. v. ITC,* 988 F.2d 1165 (Fed. Cir. 1993) ("A 'whereby' clause that merely states the result of the limitations in the claim adds nothing to the patentability or substance of the claim.").

    The clause at issue here is neither a "whereby" clause, nor part of a method claim. Moreover, when a "'whereby' clause states a condition that is material to patentability, it cannot be ignored in order to change the substance of the invention." *Hoffer v. Microsoft Corp.,* 405 F.3d 1326, 1329 (Fed. Cir. 2005). As described in Imagevision's Opening Brief, the claim language is material to patentability and thus it cannot be ignored.

IPX argues that because the "specification simply does not say" what is meant by this term, it should be given "no weight in the claim construction analysis." D.I. 76 at 7. Even if that were true, that is not the law. *See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1373 (Fed. Cir. 2004) ("The failure to define the term is, of course, not fatal, for if the meaning of the term is fairly inferable from the patent, an express definition is not necessary."). IPX's proposed construction should be rejected, and Imagevision's adopted.

      D.      "registration" ('925 patent, cl. 3,5)

| Imagevision's Proposed Construction | IPX's Proposed Construction |
|---|---|
| "initial input of information regarding a patient or customer" | "input of information regarding a patient or customer" |

IPX's proposed construction cannot be correct because it does not include any meaning even remotely close to the common-sense understanding of the word "registration." As described in Imagevision's Opening Brief, IPX's overly broad proposed construction means that *any* "input of information regarding a patient or customer" would meet this limitation. Yet, the claim language is not so broad.

IPX cites to irrelevant considerations in the specification. For example, it makes no difference to Imagevision's proposed construction that "the point of sale system can be used with pre-existing registration information" and that the "invention of the '925 patent can be incorporated with existing physician practice management systems." D.I. 76 at 8. The fact that "registration" under Imagevision's proposed construction means "*initial* input of information" does not mean "*initial and only* input of information." Indeed, importation of existing registration information into the claimed system could be "initial input of information." In short, Imagevision's proposed construction does not conflict with the intrinsic record as IPX suggests.

6

IPX's tactics of mischaracterizing Imagevision's proposed construction, then faulting the proposed construction, should be rejected,[3] and Imagevision's proposed construction's adopted.

E. **"batch updated" ('925 patent, cl. 8)**

| Imagevision's Proposed Construction | IPX's Proposed Construction |
|---|---|
| "updated with multiple pieces of information at one time" | "updated periodically" |

To support its erroneous construction, IPX cites to irrelevant portions of the specification, as well as portions of the specification that support Imagevision's proposed construction. As discussed in Imagevision's Opening Brief, however, the dispute between the parties can be resolved by reference to the surrounding *claim language*.

IPX first cites to the statement that "FIG. 32 is a block diagram which illustrates the operation of the Daily Interactive Process and Batch Interface Process (*Periodic*) of the system." D.I. 76 at 9 (citing JX1, col. 3, ll. 45-47). Without further comment, IPX apparently implies that the word "Periodic" above supports its proposed construction. However, the use of ("Periodic") in the cited passage is ambiguous at best. It certainly is not an express definition of "batch," if that is what IPX is implying. And the specification certainly does not contradict Imagevision's proposed construction, wherein "batch updated" as used in claim 8 would mean "updated with multiple pieces of information at one time."

IPX also cites to a portion of the specification that allegedly "contrasts updates in 'real time' with 'batch updates.'" D.I. 76 at 10. That portion states that "the system of the present invention, may receive and/or provide accessibility to a plurality of flat files, which may be updated in real time . . . or which may be batch updated, such as nightly." JX1, col. 8, ll. 13-18.

---

[3] The reasoning applied by IPX in support of its proposed construction is circular. The disputed term is "registration," and IPX cites to portions of the specification discussing that "the point of sale system can be used with pre-existing registration information." But the fact that the point of sale system can be used with pre-existing *registration* information" says nothing about the meaning of "registration."

7

But IPX again reads too much into the cited portion of the specification. The parties' agreed construction of "real time," meaning "without perceived delay," D.I. 69, Ex. A, does not conflict with Imagevision's proper proposed construction of "batch updated," meaning "updated with multiple pieces of information at one time." Indeed, claim 8 makes clear that the two terms are not mutually exclusive because real time refers to communication speed, not the antitheses of "batch updated," as IPX suggests.[4] IPX's proposed construction should be rejected and Imagevision's proposed construction adopted.

### F. "users of the system are assigned at least one level of access in the administrator" ('925 patent, cl. 10)

| Imagevision's Proposed Construction | IPX's Proposed Construction |
|---|---|
| ***No construction necessary*** <br> <u>alternatively</u>: <br> "users of the system are assigned at least one level of information access in the administrator" | "users of the system are given the ability to view at least one level of information in the system" |

As extensively discussed in Imagevision's Opening Brief, IPX's proposed construction inexplicably re-imagines the concept of "access" as "the ability to view," among other errors. But, even in supporting its construction, IPX argues that "the specification describes the ability of users to *access* different level of information in the system." D.I. 76 at 10 (emphasis added). Even the passages from the specification that IPX cites all universally refer to "*access*," not "ability to view." *Id.* at 11. There is simply no basis for inserting the concept of "*ability to view at least one level of information*" into the claim term, and IPX provides none. IPX's proposed construction also fails for being hopelessly confusing because, in re-writing the claim language, IPX has left the jury to apply "one level of information," which is not used anywhere in the '925

---

[4] Claim 8 provides for a system where "the at least one database is *batch updated* with data from each of the at least two terminals in *real time* at a predetermined interval." JX1, cl. 8 (emphasis added).

8

patent and has no readily apparent meaning. Imagevision's proposed construction should be adopted.

G.     "patient service" ('925 patent, cl. 24)

| Imagevision's Proposed Construction | IPX's Proposed Construction |
|---|---|
| "a service that consists of or furthers the provision of medical care to a patient" | "a healthcare service provided by or at the direction of a physician" |

"non patient service" ('925 patent, cl. 24)

| Imagevision's Proposed Construction | IPX's Proposed Construction |
|---|---|
| "a service that does not consist of or further the provision of medical care to a patient" | "parking, cafeteria, gift shop, pharmacy, durable medical equipment, and laboratory analysis where no physician service is rendered concurrently with the laboratory analysis" |

As demonstrated in Imagevision's Opening Brief, IPX's proposed constructions for "patient service" and "non patient service" are unworkable and should be rejected. In advocating its outcome-oriented construction of "non patient service," IPX merely cites to irrelevant and legally deficient extrinsic evidence. As a threshold matter, IPX's resort to extrinsic evidence should be rejected because IPX does not point to any ambiguity in the intrinsic record, a necessary prerequisite to the use of extrinsic evidence. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term. In such circumstances, it is improper to rely on extrinsic evidence."); *see also Phillips,* 415 F.3d at 1318-19.

In any event, IPX cites to irrelevant (and conflicting[5]) extrinsic documents dated *years after* the priority date of the '925 patent, which is in November 2002. JX8 is dated October *2012* and does not even purport to discuss (or define) a "term of art," but rather discusses a specific "Medicare Plus Blue PPO plan." JX8 at 1. Similarly, JX9 is dated nearly a decade after the

---

[5] Indeed—if anything—IPX's extrinsic evidence injects ambiguity into this process.

9

filing of the patent-in-suit and discusses the specific financials of the University of California Irvine Medical Center. Such extrinsic evidence is irrelevant to claim construction. *See Tegal Corp. v. Tokyo Electron Am., Inc.,* 257 F.3d 1331, 1345 (Fed. Cir. 2001) (rejecting argument that definition of term "glow discharge" in physics book published ten years after patent issued demonstrated that claim was limited to a specific current flow, where nothing in the intrinsic evidence suggested the patentee limited its invention to any current range). The post-filing extrinsic evidence does not provide any evidence of how the term was used when the application was filed. It is therefore simply not relevant. *See Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.,* 334 F.3d 1294, 1299 (Fed. Cir. 2003) (refusing to consider dictionary and treatise evidence regarding ordinary meaning because the sources were not contemporaneous); *see also Phillips,* 415 F.3d at 1313, 1332.

      Mr. Braun's declaration is also improper and irrelevant to claim construction. First, Mr. Braun does not provide any evidence that he is even remotely qualified as a person of ordinary skill in the art to provide even minimally relevant extrinsic support. Mr. Braun merely "reviewed the specification and prosecution history of [the '925 patent]" and "the Joint Claim Construction Statement of the Parties." JX11 at ¶ 3-4. Based solely on his "review," Mr. Braun opines that "'non patient service' is a term of act in the healthcare field encompassing, parking, cafeteria, gift shop, pharmacy, durable medical equipment, and laboratory analysis where no physician service is rendered concurrently with the laboratory analysis." *Id.* at ¶ 5. This is legally insufficient because Mr. Braun is not a qualified expert, thus his declaration should be given no weight in the Court's analysis.[6] Imagevision's proposed construction should therefore be adopted.

---

[6] Moreover, as noted in Imagevision's Opening Brief, IPX's own internal documents refute Mr. Braun's self-serving declaration offered in support of its erroneous construction. D.I. 75 at 17 (citing JX6).

10

### III. CONCLUSION

For the reasons above, and the reasons set forth in Imagevision's Opening Brief, Imagevision respectfully requests that the Court adopt its proposed claim constructions.

Dated:  June 5, 2013

Respectfully submitted,

*/s/ Franis DiGiovanni*
Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
Novak Druce Connolly Bove + Quigg LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19801
Tel:  (302) 658-9141
frank.digiovanni@novakdruce.com
thatcher.rahmeier@novakdruce.com

*Attorneys for Plaintiff ImageVision.Net, Inc.*